UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                  :

QUI CHEN,                        :     09-CV-2306 (ARR)
                  :

          Plaintiff,       :     NOT FOR ELECTRONIC
                  :     OR PRINT PUBLICATION

   -against-             :
                  :     OPINION & ORDER

UNITED STATES OF AMERICA and  :
UNITED STATES DEPARTMENT OF JUSTICE  :
BUREA OF PRISONS,         :

         Defendants.     :
                  :

------------------------------------------------------------------ X

ROSS, United States District Judge:

On June 1, 2009, plaintiff Qin Chen[1] filed a complaint against defendants, the United

States of America and the United States Department of Justice Bureau of Prisons ("BOP")

(collectively, "defendants" or "the government"). Plaintiff's complaint stems from an altercation

between plaintiff and another prisoner at the Metropolitan Detention Center ("MDC"), a federal

prison in Brooklyn, on January 29, 2008.[2] In his complaint, plaintiff alleges that certain BOP

officers were negligent and deliberately indifferent with respect to the January 29 incident and

that plaintiff sustained injuries as a result of their actions. Plaintiff seeks monetary damages in

excess of $75,000.00 against defendants under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§§ 1346, 2671 et seq. Presently before the court are plaintiff's motion to amend his complaint

pursuant to Federal Rule of Civil Procedure 15(a) and defendants' motion to dismiss for lack of

subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) or, in the alternative, for

---

[1] While the caption identifies plaintiff as "Qui Chen," according to plaintiff's deposition testimony, the correct
spelling of his name is "Qin Chen." Oct. 14, 2010 Declaration of AUSA Catherine M. Mirabile ("Mirabile Dec."),
Dkt. No. 37, Ex. E at 25.
[2] Plaintiff's complaint alleges that the incident took place on January 31, 2008; however, the parties do not dispute
that the date stated in the complaint is incorrect and that the altercation in fact took place on January 29, 2008.

summary judgment pursuant to Rule 56. For the reasons set forth below, plaintiff's motion is denied and defendants' motion to dismiss is granted.

## **BACKGROUND**[3]

I.    The January 29, 2008 Incident at MDC

On January 29, 2008, plaintiff and Filemon Timana were both inmates housed in Unit G 43 of the MDC (the "Unit"). Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Def. 56.1"), Dkt. No. 36, ¶ 16. Prior to that date, there had been no altercations between plaintiff and Timana, and plaintiff had never complained to any BOP officer about Timana. Id. ¶¶ 18-20.

The January 29 altercation between plaintiff and Timana occurred around evening meal time in the Unit. After receiving his evening meal on the first floor of the Unit, plaintiff went to the second floor to use a microwave, which was located in the gym room. Id. ¶¶ 26-27. At the time, no BOP officers were present in the gym room. Id. ¶ 36. While plaintiff was using the microwave, Timana entered the room. Id. ¶ 28. Immediately upon entering, Timana insulted plaintiff and asked him if he wanted to fight. Id. ¶ 31. When plaintiff tried to evade Timana, Timana used his arm to collar plaintiff's neck. Id. Timana then dragged plaintiff further into the room and pushed plaintiff to the floor. Id. ¶ 30. Plaintiff immediately got up and ran downstairs to the first floor to look for a BOP officer. Id. ¶ 34.

At approximately 5:22 p.m., plaintiff approached BOP Counselor Glenford Edwards, who was supervising meal distribution on the first floor of the Unit. Id. ¶¶ 22, 37. Counselor Edwards was standing several feet away from the main unit door, which leads to a corridor outside the Unit that is commonly referred to as the "sally-port." Id. ¶¶ 5, 37. Plaintiff reported to Counselor Edwards that he had been assaulted by Timana in the second floor gym room. Id. ¶ 40. Plaintiff described how Timana had collared his neck, and he showed Counselor Edwards

---

[3] Unless otherwise noted, the following facts are not in dispute.

a bruise to his neck and chin. Id. Plaintiff asked Counselor Edwards for help. Id. ¶ 40.

The government has submitted the January 29, 2008 surveillance video from the MDC that depicts the subsequent assault by Timana against plaintiff. Mirabile Dec. Ex. J. The video, which begins at 5:24:55 p.m., shows plaintiff standing with Counselor Edwards several feet from the main unit door. As Timana approaches them, Counselor Edwards turns and walks towards the main unit door with plaintiff, as Timana trails closely behind them. When the three individuals reach the main unit door, Counselor Edwards is standing to the right of Timana, Timana is standing in the middle, and plaintiff is standing to the left of Timana. At 5:25:08 p.m., Timana punches plaintiff in the face with his right fist, and plaintiff drops to the floor. Following the assault, the video shows the Counselor Edwards standing by the main unit door while plaintiff lies on the floor and Timana paces back and forth in the hallway leading to the main unit door. At 5:25:40 p.m., another BOP officer enters the Unit and directs the other inmates away from the area of the assault. Counselor Edwards then escorts Timana out of the main unit door into the sally-port. At 5:26:22 p.m., six BOP officers enter the Unit and begin attending to plaintiff and securing the Unit. Subsequently, numerous additional officers enter the Unit. At 5:28:19 p.m., plaintiff is helped from the Unit by BOP officers.

At his deposition in this case, Counselor Edwards testified regarding the January 29 incident. He stated that, "anytime there is any indication of a fight, an assault between inmates, we have to make sure that not only we are safe but the inmates are safe." Mirabile Dec. Ex. C at 16. Thus, after plaintiff showed him the bruises to his neck and chin, in order to ensure that the area was safe, Counselor Edwards attempted to escort plaintiff outside the main unit door into the sally-port. Id. Ex. C at 16-17. Counselor Edwards testified that he was in the process of escorting plaintiff to the main unit door when inmate Timana approached him and plaintiff. Id.

Ex. C at 18. As Timana approached, plaintiff identified him as the individual who attacked him in the gym room. Id. Timana then began speaking to Counselor Edwards about the incident, and Counselor Edwards gave Timana two direct orders to step back, which Timana disobeyed. Id. Ex. C at 16, 19. Although Counselor Edwards was wearing a body alarm – a device used to call for assistance from other officers – he did not activate it when Timana approached, because he was escorting plaintiff out of the Unit to separate him from Timana. Id. Ex. C at 16-17, 22. Timana then said "Fuck it, if I am going to go to Special Housing I may as well go for a reason." Id. Following his statement, "Inmate Timana threw a closed right fist striking Inmate Chen in the facial area." Id. Ex. C at 20. Counselor Edwards immediately activated his body alarm and called for assistance. Id. Ex. C at 21. Following the arrival of other BOP officers, Counselor Edwards escorted Timana out of the Unit into the sally-port. Id. Ex. C at 24.

Plaintiff also testified regarding the January 29 altercation at a deposition in this case, and his testimony corresponds to Counselor Edwards' testimony about the incident. Plaintiff testified that, after Timana attacked him in the gym room, he approached Counselor Edwards to report the incident. Mirabile Dec. Ex. E at 130. After speaking to Counselor Edwards for one or two minutes, Timana approached them, and plaintiff identified him as the assailant. Id. Ex. E at 132. Timana then attempted to give Counselor Edwards an explanation of the incident. Id. Ex. E at 133. Counselor Edwards told Timana to step back several times, but Timana did not comply. Id. Ex. E at 135-136, 142. Plaintiff stood "very, very close" to Counselor Edwards because he was "very scared" of Timana. Id. Ex. E at 137. Plaintiff testified that Counselor Edwards told plaintiff to come with him, and they headed towards the main unit door. Id. Ex. E at 140. Before they got through the main unit door, Timana struck plaintiff, and plaintiff lost consciousness. Id. Ex. E at 143.

4

II.    Procedural History

Following the January 29 incident, plaintiff filed an administrative tort claim with the BOP for the injuries he suffered at the MDC; the BOP sent plaintiff an acknowledgment of the claim on October 7, 2008. Compl. ¶ 7. On February 9, 2009, the BOP denied plaintiff's claim and informed him of his right to file a suit in federal district court within six months. Compl. Annex 2. Although plaintiff filed an administrative tort claim with the BOP, he did not file a complaint under the multi-tier BOP administrative remedy system. Def. 56.1 ¶¶ 64-66.

On June 1, 2009, plaintiff filed a timely complaint in this court. In his complaint, plaintiff alleges that he was assaulted by another prisoner at the MDC named "Phil" in January 2008. Compl. ¶ 10. He claims he reported this assault to Counselor Edwards and that "[a]bsolutely no action was taken." Id. Plaintiff alleges that he was then assaulted a second time by "Phil" in the presence of Counselor Edwards. Id. ¶ 10. He asserts that Counselor Edwards "permitted the assault to continue until the point plaintiff was severely injured." Id. ¶ 11. He also claims that the assault occurred while another BOP officer, Lieutenant Kevin Lopez, "was at or immediately outside of the doorway." Id. As a result of the second assault, plaintiff asserts that he "sustained blindness or virtual blindness of his right eye." Id. ¶ 12. Plaintiff brings two causes of action related to that injury: he claims that Counselor Edwards and Lieutenant Lopez were (i) "negligent in fulfilling their responsibilities as Correction Officers" and (ii) "committed deliberate indifference to plaintiff's situation in violation of [42 U.S.C.] § 1983 . . . ." Id. ¶¶ 13, 15. Plaintiff names the United States and BOP as defendants. Pursuant to the FTCA, plaintiff seeks monetary damages in excess of $75,000.00 against them.

On July 9, 2010, plaintiff filed a motion to amend his complaint along with a proposed amended complaint. Dkt. No. 20-1. In that proposed complaint, plaintiff restates the allegations

in his original complaint against Counselor Edwards and identifies Timana as the assailant during the January 29 incident. Plaintiff names the United States and Counselor Edwards as the sole defendants; he drops BOP as a defendant. Plaintiff also drops his allegations against Lieutenant Lopez, conceding that Counselor Edwards was the only BOP officer present during Timana's second assault on plaintiff. July 7, 2010 Amended Affirmation of Robert M. Ginsberg, Dkt. No. 20, ¶ 1. Plaintiff brings two causes of action in his amended complaint. First, he claims Counselor Edwards "was negligent in fulfilling his responsibilities as a Correction Officer." Dkt. No. 20-1 ¶ 13. Pursuant to the FTCA, he seeks monetary damages against the United States under his first cause of action. Second, he asserts that Counselor Edwards "committed deliberate indifference to plaintiff's situation in violation of the Eighth Amendment to the U.S. Constitution." Id. ¶ 15. Pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), he seeks monetary damages against Counselor Edwards under his second cause of action. Plaintiff claims damages in excess of $75,000.00.

On December 2, 2010, defendants filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment. In their motion, defendants contend that, under the discretionary function exception to the FTCA, this court lacks subject matter jurisdiction over plaintiff's first cause of action in his original complaint. With respect to plaintiff's second cause of action in his original complaint, defendants assert that this court lacks subject matter jurisdiction because the United States has not waived sovereign immunity with respect to constitutional tort claims. Defendants further argue that, even assuming this court has subject matter jurisdiction over the claims in plaintiff's original complaint, summary judgment is appropriate because, as a matter of law, plaintiff cannot establish negligence.

For the reasons set forth below, the court holds that (i) it lacks subject matter jurisdiction over both causes of action set forth in plaintiff's original complaint and (ii) plaintiff's proposed amendment to his complaint would be futile. Accordingly, defendants' motion to dismiss is granted and plaintiff's motion to amend is denied.

## **DISCUSSION**

I.    Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

A.    *Legal Standard*

As the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on facts existing at the time the complaint was filed. Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). "In a motion to dismiss pursuant to Rule 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malay., 269 F.3d 133, 140 (2d Cir. 2001) (citation omitted). "How the district court proceeds to resolve the motion to dismiss depends upon whether the motion presents a factual challenge." Id. (citation omitted). "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, . . . the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . ." Id. (internal citations and quotation marks omitted). But where, as here, evidence relevant to the jurisdictional question is before the court, the court may refer to that evidence. Id. Specifically, for the purposes of defendants' motion to dismiss, the court may consider affidavits and other materials beyond the pleadings. See id. at 141 & n.6. In evaluating that evidence, the court does not draw inferences favorable to plaintiff. See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

*B.* *The Court Lacks Subject Matter Jurisdiction over Plaintiff's First Cause of Action*

In the first cause of action in his original complaint, with respect to the January 29 incident, plaintiff alleges that Counselor Edwards and Lieutenant Lopez "were negligent in fulfilling their responsibilities as Correction Officers." Compl. ¶ 13. Pursuant to the FTCA, he seeks monetary damages against the United States and BOP. Plaintiff has conceded that Lieutenant Lopez was not involved in the January 29 incident. Moreover, BOP is not a proper defendant against plaintiff's FTCA claim, because such a claim may only be brought against the United States. Barnes v. Unites States, No. 00-CV-3544 (SJF)(ASC), 2004 U.S. Dist. LEXIS 7071, at *4-*5 (E.D.N.Y. April 12, 2004) ("The [FTCA] authorizes suits only against the United States, 28 U.S.C. § 2680(a) (2000); Sprecher v. Granber, 716 F.2d 968, 973 (2d Cir.1983), and not against federal agencies and federal officials acting in their official capacities, 28 U.S.C. §§ 2679(a), (b)(1); Rivera v. United States, 928 F.2d 592, 608 (2d Cir.1991).") Hence, the negligence claim against BOP and the negligence claim against the United States arising out of the alleged actions of Lieutenant Lopez must be dismissed. With respect to plaintiff's first cause of action then, the court need only consider the negligence claim against the United States arising out of the actions of Counselor Edwards.

In its motion to dismiss, defendants argue that plaintiff's first cause of action is barred by the discretionary function exception to the FTCA, because (i) "the acts or omissions alleged to be negligent involve elements of judgment of choice not compelled by federal statute, regulation or policy," and (ii) "the decisions regarding the supervision of inmates, and when and how to stop an inmate-on-inmate attack are susceptible to policy analysis . . . ." Memorandum of Law in Support of Defendants' Motion ("Def. Mem."), Dkt. No. 39, at 2. In response, plaintiff argues that Counselor Edwards lacked discretion during the January 29 incident to take certain actions.

8

Moreover, he asserts that certain of Counselor Edwards' actions were "careless" and thus the discretionary function exception to the FTCA does not apply.

The FTCA waives the sovereign immunity of the United States for personal injury suits "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This waiver, however, is limited in several respects. The discretionary function exception is the relevant limitation in this instance. Under that exception, the United States cannot be held liable for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "This exception prevents 'judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Hartman v. Holder, No. 00-CV-6107 (JG), 2005 U.S. Dist. LEXIS 20338, at *26 (E.D.N.Y. Aug. 21, 2005) ("Hartman I") (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)). "If a claim falls within the exception, a federal court does not have subject matter jurisdiction over the claim." Id. (citation omitted).

For the discretionary function exception to apply, two conditions must be met: (i) "the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation" and (ii) "the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." Id. (citations and internal quotation marks omitted). "The discretionary function exception is not limited to decisions made at the policy or planning level, but rather extends to decisions at the operations level that are in furtherance of governmental policy." Id. (citations omitted). "Day-to-day management . . . regularly requires judgment as to which of a range of permissible

courses is wisest." Gaubert, 499 U.S. at 325. Thus, "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." Id. (citation and internal quotation marks omitted).

The Supreme Court, however, has cautioned that not all discretionary acts performed by a government agent within the scope of his employment fall within this exception. See Gaubert, 499 U.S. at 325 n.7. Indeed, the Second Circuit has held that, under the so-called "negligent guard theory," an official's "lazy or careless failure to perform his or her discretionary duties" are negligent acts that "neither involve an element of judgment or choice within the meaning of Gaubert nor are grounded in considerations of governmental policy." Coulthurst v. United States, 214 F.3d 106, 109-110 (2d Cir. 2000); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) (citing Coulthurst as articulating the "negligent guard theory"). "The negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter jurisdiction." Triestman, 470 F.3d at 476. Where the negligent guard theory applies, a plaintiff's claims are not barred by the discretionary function exception.

In this case, the court finds that both prongs of the discretionary function exception are satisfied and that the negligent guard theory is inapplicable. Thus, the court lacks subject matter jurisdiction over plaintiff's first cause of action under the discretionary function exception.

      i.     The Discretionary Act Prong

Under the first prong of the discretionary function exception, the court must determine whether the acts in question involved an element of "judgment or choice." Enigwe v. Zenk, No. 03-CV-854 (CBA), 2007 U.S. Dist. LEXIS 68317, at *25 (E.D.N.Y. Sept. 14, 2007) (citing Gaubert, 499 U.S. at 325; Berkowitz v. United States, 486 U.S. 531, 536, 537 (1988)). "That is, the Court must determine whether a statute, regulation, or policy mandates a specific course of

action. If such a mandate exists, the discretionary function exception does not apply and the Court may consider the FTCA claim." Id. (citation omitted). But if a statute, regulation, or policy "is not sufficiently specific to control the conduct in question . . ., or is not mandatory, there is room for discretion . . . ." Fazi v. United States, 935 F.2d 535, 538 (2d Cir. 1991). When an employee acts under such a statute, regulation, or policy, his conduct is the product of judgment or choice, and the court must proceed to analyze the second prong of the discretionary function exception. Id.

In this case, during the January 29 incident, Counselor Edwards actions were the product of judgment or choice. "[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981). The federal statute that prescribes the BOP's duties states, in relevant part, that the BOP must:

> provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States . . . [and] provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a)(2)-(3). This provision "sets forth a mandatory duty of care[;] it does not . . . direct the manner by which the BOP must fulfill this duty." Taveras v. Hasty, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005) (internal quotation marks omitted). In particular, the statute "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence . . . ." Hartman I, 2005 U.S. Dist. LEXIS 20338, at *27-*28. Likewise, the federal regulations governing the protection and discipline of inmates are discretionary in nature. See, e.g., 28 C.F.R. § 541.10 ("Staff shall take disciplinary action *at such times and to the degree necessary* to regulate an inmate's behavior within the Bureau rules and institution guidelines and to promote a safe and orderly institution environment.") (emphasis added); 28 C.F.R. § 541.22(a) ("The warden *may* also place an inmate

in administrative detention when the inmate's continued presence in the general population poses a serious threat . . . to other inmates.") (emphasis added). Thus, "although prison officials have a statutory duty to protect inmates from harm, in general decisions regarding the best way to safeguard prisoners are discretionary in nature." Enigwe, 2007 U.S. Dist. LEXIS 68317, at *26. Accordingly, because Counselor Edwards acted under a statute and regulations conferring discretion, his actions during the January 29 incident were the product of judgment or choice.

        ii.     The Public Policy Prong

Under the second prong of the discretionary function exception, a court must determine whether the actions at issue are grounded in public policy. "[I]f a regulation, rule, or statute 'allows the employee discretion,' a 'strong presumption' arises that the employee's acts 'are grounded in policy when exercising that discretion.'" Enigwe, 2007 U.S. Dist. LEXIS, at *29 (quoting Gaubert, 499 U.S. at 324). "That presumption can be rebutted, however, if 'the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'" King v. United States, 491 F.Supp.2d 286, 297 (D. Conn. 2007) (quoting Gaubert, 499 U.S. at 324-325). The analysis focuses on whether the actions in question involve "choices motivated by considerations of economy, efficiency, and safety." Hartman I, 2005 U.S. Dist. LEXIS 20338, at *29 (citing Coulthurst, 214 F.3d at 109-110). In conducting that analysis, "the court's inquiry is not on the 'agent's subjective intent in exercising the discretion conferred . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" King, 491 F.Supp.2d at 297 (quoting Gaubert, 499 U.S. at 325) (ellipsis in original).

Numerous courts have held that prison decisions regarding security matters are grounded in public policy. See, e.g., Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002) (decisions about how to respond to a reported threat upon an inmate implicate social and public policy

considerations); Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998) (prison officials' decisions about security levels, available resources, and classification of inmates "are inherently grounded in social, political, and economic policy."); Ortiz v. United States, No. 01 Civ. 4665 (AKH), 2002 U.S. Dist. LEXIS 12621, at *11 (S.D.N.Y. July 11, 2002) (decision regarding inmate access to razor blades involves public policy considerations); Green v. United States, Civ. A. No. 94-5706, 1995 U.S. Dist. LEXIS 14190, at *10 (E.D.Pa. Sept. 22, 1995) ("FTCA cases have uniformly held that prison decisions regarding security matters are protected by the discretionary function exception.") (collecting cases). In particular, courts have held that prison officials' decisions about how best to respond to violence between inmates implicate policy considerations. See, e.g., Miller v. United States, 992 F.2d 1223 (10th Cir. 1993) ("The decisions of prison officials during a fight between two groups of prisoners . . . remains the type of decision protected by the discretionary function exception to the FTCA."); Taveras, 2005 WL 1594330, at *4 (official's "on-the-spot decision" to wait for backup, instead of breaking up a fight, reflected her personal judgment about the best course of action in that situation and was grounded in policy).

Here, Counselor Edwards actions during the January 29 incident were grounded in policy. To begin with, because his actions were taken under statutes and regulations conferring discretion upon prison officials to ensure prisoner safety, there is a "strong presumption" that his actions were grounded in policy. That presumption is confirmed by examining "the nature of the actions taken" by Counselor Edwards. See King, 491 F.Supp.2d at 297. In selecting a course of action to resolve the January 29 altercation between plaintiff and Timana, Counselor Edwards had to ensure that he, the inmates involved in the altercation, and the other inmates were safe. He had to assess the potential for further violence, the limited resources available to him, and the

13

rights of the prisoners involved. Because the altercation had the potential to rapidly escalate, he had to weigh competing factors and make an immediate judgment regarding the most effective and efficient means to resolve the situation. Thus, Counselor Edwards' determination about how best to address the altercation between plaintiff and Timana involved "considerations of economy, efficiency, and safety." Hartman I, 2005 U.S. Dist. LEXIS 20338, at *29. The actions he took during the January 29 altercation between plaintiff and Timana were grounded in policy.

### iii. The Negligent Guard Theory

Plaintiff appears to contend that certain actions taken by Counselor Edwards were careless and thus the negligent guard theory should apply to remove his conduct from the discretionary function exception. Specifically, plaintiff contends that it was careless for Counselor Edwards (i) to "walk away" from plaintiff and Timana towards the main unit door; (ii) to stand to the right of plaintiff and Timana, rather than in between them; and (iii) to delay ringing his body alarm until after Timana struck plaintiff. Plaintiff argues that Counselor Edwards misjudged the seriousness of the altercation between plaintiff and Timana and pursued a course of action insufficient to address the threat that Timana posed to plaintiff. He contends that, if Counselor Edwards had not walked away from plaintiff, stayed in the middle of plaintiff and Timana, and activated his body alarm, Timana would not have struck plaintiff. Plaintiff argues that, because Counselor Edwards failed to take those actions, he was careless and the negligent guard theory applies in this case. The court disagrees.

Under the negligent guard theory, the Second Circuit has held that "certain negligent acts, such as those borne out of laziness, hastiness, or inattentiveness, fall so far outside the range of appropriate judgment that they can no longer be viewed as an exercise of discretion." Enigwe, 2007 U.S. Dist. LEXIS 68317, at *29 (citing Triestman, 470 F.3d at 476). The discretionary

function exception to the FTCA does not bar negligence claims arising from such acts. Id.; see Coulthurst, 214 F.3d 109 (distinguishing between negligent decisions grounded in policy and those borne out of laziness, haste, or inattention under the discretionary function exception).

The application of the negligent guard theory in Hartman v. Holder, No. 00-CV-6107 (ENV)(JMA), 2009 U.S. Dist. LEXIS 23213 (E.D.N.Y. March 23, 2009) ("Hartman II"), is instructive in this case. There, plaintiff contended that a BOP officer negligently failed to prevent an assault on him by other inmates at the MDC. Id. at *4-*16. In support of his claim, plaintiff submitted evidence demonstrating that that the BOP officer: (i) failed to report threats against him that he relayed to the officer prior to the assault; (ii) went on rounds in a predictable, routine fashion in contravention of her training; and (iii) failed to respond to the attack for fifteen minutes despite plaintiff's calls for help. Id. at *25-*32. The court found that where a "plaintiff has argued, with supporting evidence, that an official has been careless or inattentive in the execution of her responsibilities, reliance by the government on that official's general discretionary authority is no bar to suit." Id. at * 32-*33. Thus, the court held that it had subject matter jurisdiction to adjudicate plaintiff's FTCA claim under the negligent guard theory. Id.

The actions of the BOP officer in Hartman II stand in contrast to the actions of Counselor Edwards in this case. According to the surveillance video of the January 29 incident and the deposition testimony of both Counselor Edwards and plaintiff, upon being informed of the threat to plaintiff's safety, Counselor Edwards immediately reacted to the situation and attempted to resolve it. Plaintiff testified that, prior to the January 29 incident, he had not complained to BOP officers about Timana. Counselor Edwards thus first became aware of the threat to plaintiff when plaintiff approached him following Timana's gym room attack. One or two minutes after being made aware of that threat, Counselor Edwards began escorting plaintiff out of the Unit in

order to ensure his safety. Timana then approached Counselor Edwards and plaintiff. Counselor Edwards gave Timana multiple direct orders to step back, and he continued to move towards the main unit door with plaintiff. Counselor Edwards testified that he did not activate his body alarm when Timana approached, because he was attempting to separate the inmates by removing plaintiff from the Unit. Despite Counselor Edwards' efforts to resolve the altercation, thirteen seconds after Timana approached, as they stood directly outside the main unit door, Timana struck plaintiff. Thus, although Counselor Edwards' actions failed to prevent the attack, the undisputed evidence shows that he made an on-the-spot assessment of the situation and immediately pursued a course of action to resolve it. Unlike the BOP officer in Hartman II, Counselor Edwards did not act with laziness, haste, or inattention; there is no evidence in the record that he failed to address previous threats, contravened his training, or failed to respond to the situation.

Plaintiff may be correct that, if Counselor Edwards had taken different actions during the January 29 incident, he could have prevented Timana's assault on plaintiff. It is possible, as plaintiff suggests, that the wiser course of action would have been for Counselor Edwards to keep the inmates in the Unit, stand in between them, and activate his body alarm. In selecting a different course of action, Counselor Edwards may have misjudged the situation and acted imprudently, or even negligently, in light of the threat that Timana posed. But his decision to separate the inmates by escorting plaintiff out of the Unit was not so "far outside the range of appropriate judgment that [it] can no longer be viewed as an exercise of discretion." Enigwe, 2007 U.S. Dist. LEXIS 68317, at *29. Rather, faced with a difficult and rapidly escalating situation, Counselor Edwards "exercised his judgment as to which of a range of permissible courses [was] the wisest." Gaubert, 499 U.S. at 325. Such decisions, even if negligent, are

shielded by the discretionary function exception. See Miller, 992 F.2d at 1223; Taveras, 2005 WL 1594330, at *4 & n.5. Under the FTCA, this court may not, through hindsight, second-guess the decisions that Counselor Edwards made during the January 29 incident.

Accordingly, because Counselor Edwards' actions satisfy both prongs of the discretionary function exception, and because the negligent guard theory does not apply in this case, this court lacks subject matter jurisdiction over plaintiff's first cause of action in his original complaint. Defendants' motion to dismiss is granted with respect to that claim.

C.      *The Court Lacks Subject Matter Jurisdiction over Plaintiff's Second Cause of Action*

The second cause of action set forth in plaintiff's original complaint alleges that "Correction Officer Edwards and Correction Lieutenant Lopez committed deliberate indifference to plaintiff's situation in violation of [42 U.S.C.] § 1983." Compl. ¶ 15. Actions brought pursuant to 42 U.S.C. § 1983 are only available against state actors. Because plaintiff named the United States and BOP, a federal agency, as defendants, the court construes plaintiff's second cause of action as brought pursuant to Bivens. Plaintiff's Bivens claims against the United States and the BOP must be dismissed because the court lacks subject matter jurisdiction over such claims. Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983) (no subject matter jurisdiction over Bivens claims against the United States); Newton v. Bureau of Prisons, No. 10-CV-5046, 2011 U.S. Dist. LEXIS 46094, at *8 (E.D.N.Y. April 28, 2011) (no subject matter jurisdiction over Bivens claim against BOP). Accordingly, defendants' motion to dismiss plaintiff's second cause of action is granted.

17

II.    Plaintiff's Motion to Amend his Complaint

       *A.    Legal Standard*

       Where, as here, a petitioner is no longer entitled to amend his pleading as a matter of course, he may amend "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Although Rule 15(a) specifically provides that such "leave shall be freely given when justice so requires," id., district courts have discretion to deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002), or "where amendment would be futile," In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir. 2005).

       *B.    Plaintiff's Proposed Amendment to His Complaint would be Futile*

       In his proposed amended complaint, plaintiff names the United States and Counselor Edwards as sole defendants and asserts two causes of action. First, he reiterates his FTCA negligence claim against the United States arising out of Counselor Edwards' conduct. Second, he asserts a Bivens claim against Counselor Edwards. Because this court is barred from considering either cause of action, allowing plaintiff to amend his complaint would be futile.

       For the reasons discussed above, the first cause of action in plaintiff's proposed amended complaint is barred by the discretionary function exception to the FTCA. Thus, it would be futile to include that cause of action in an amended complaint.[4]

       With respect to the second cause of action in plaintiff's proposed complaint – his Bivens claim against Counselor Edwards – plaintiff has failed to exhaust his administrative remedies. "Under the Prison Litigation Reform Act ("PLRA"), prisoners must first exhaust available

---

[4] To the extent that plaintiff seeks to maintain a negligence claim against Counselor Edwards in his official capacity under this cause of action, the court is barred from considering such a claim. Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA."). Amending the complaint to include such a claim would be futile.

administrative remedies before bringing an action alleging violations of federal law." Hartman I, 2005 U.S. Dist. LEXIS 20338, at *10 (citations omitted); 42 U.S.C. § 1997e(a) ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Hartman I, 2005 U.S. Dist. LEXIS 20338, at *10 (citations and internal quotation marks omitted). "Thus, federal prisoners suing under [Bivens], must first exhaust inmate grievance procedures . . . ." Porter v. Nussle, 534 U.S. 516, 524 (2002).

"Where a prisoner fails to exhaust administrative remedies but asserts a plausible reason for the failure, a court conducts a three-part inquiry." Id. "Specifically, it determines whether: (1) administrative remedies were in fact available; (2) defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it; or (3) defendants acted to inhibit the inmate from exhausting his remedies." Id. at *13 (citation omitted). "Courts also consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citation and internal quotation marks omitted).

Here, it is undisputed that plaintiff did not file a complaint under the multi-tier BOP administrative remedy system. Plaintiff does not allege that this failure was due to the unavailability of administrative remedies or defendants' actions. Nor does plaintiff allege that defendants forfeited the non-exhaustion defense. Indeed, in his proposed amended complaint, plaintiff does not allege any facts regarding his non-exhaustion. Rather, in his memorandum of

law in support his motion to amend, plaintiff argues that (i) because his claim arises out of a single incident, not prison conditions, he was not required to file an administrative claim, (ii) his medical treatment during the first month after the incident prevented him from filing an administrative claim, and (iii) he misunderstood the administrative process because his knowledge of the English language is extremely limited.

Plaintiff's arguments fail to justify his non-compliance with BOP's administrative requirements. With respect to his first argument, the PLRA requires federal prisoners to utilize administrative procedures prior to filing any <u>Bivens</u> claim, even claims related to a single incident. <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. at 524; <u>Hartman I</u>, 2005 U.S. Dist. LEXIS 20338, at *10-*12. With respect to plaintiff's second argument, even assuming that delay due to medical treatment is an exception to the PLRA exhaustion requirement, plaintiff does not allege that he attempted to exhaust his claims following the delay due to his medical treatment; thus, that delay does not justify his non-exhaustion. <u>See</u> <u>Hahn v. Armstrong</u>, No. 10-1785, 2011 U.S. App. LEXIS 938, at * (8th Cir. Jan. 18, 2011) ("Finally this court has not recognized exceptions to the PLRA's exhaustion requirement for delay due to medical treatment or poor legal advice. Even were we to recognize these exceptions, they would not excuse the four year delay in this case."). With respect to plaintiff's third argument, "[w]hile [plaintiff's] unfamiliarity with the English language is sufficient to merit assistance in filing appeals, <u>see</u> 28 C.F.R. § 542.16, it does not amount to a special circumstance justifying departure from the exhaustion requirement of the [PLRA]." <u>Baez v. Kahanowicz</u>, 469 F.Supp.2d 171, 179 (S.D.N.Y. 2007), <u>aff'd</u> 278 Fed. Appx. 27 (2d Cir. 2008). Lastly, although plaintiff does not raise the argument, the court notes that plaintiff's "filing of an administrative tort claim . . . does not excuse [his] failure to meet the separate exhaustion requirements for a <u>Bivens</u> claim under the PLRA." <u>Nwaokocha v.</u>

Sadowski, 369 F.Supp.2d 363, 368 (E.D.N.Y. 2005); see Hartman I, 2005 U.S. Dist. LEXIS 20338, at *19-*24.

Because plaintiff failed to exhaust his Bivens claim under the multi-tier BOP administrative remedy system, the court is barred from adjudicating that claim. Thus, allowing plaintiff to amend his complaint to include his second cause of action would be futile.[5]

## CONCLUSION

For the foregoing reasons, the court holds that (i) it lacks subject matter jurisdiction over both causes of action set forth in plaintiff's original complaint and (ii) plaintiff's proposed amendment to his complaint would be futile. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) is granted and plaintiff's motion to amend his complaint pursuant to Rule 15(a) is denied.

The Clerk of Court is directed to enter judgment in favor of defendants. The Clerk of Court is further directed to amend the case caption to reflect the correct spelling of plaintiff's name, "Qin Chen."

SO ORDERED.

s/Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated:    May 19, 2011
          Brooklyn, New York

---

[5] To the extent plaintiff's second cause of action seeks to assert a Bivens claim against the United States, that claim is barred. Keene Corp.,700 F.2d at 845 n.13. Amendment of the complaint to include such a claim would be futile.